IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JAMES E. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:05-CV-3179-RM-CHE |
| v. ) | |
| ) | District Judge Richard Mills |
| YMCA ) | |
| ) | Magistrate Judge Charles H. Evans |
| and ) | |
| ) | |
| AARP, ) | |
| ) | |
| Defendants. ) | |

**<u>DEFENDANT AARP FOUNDATION'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant AARP Foundation[1] moves, pursuant to Fed. R. Civ. P. 56(b) and CDIL-LR 7.1(D), for summary judgment in its favor upon the claim asserted against it by Plaintiff. Plaintiff's lone claim against AARP Foundation is premised upon the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. However, Plaintiff's claim must fail for the fundamental reason that Plaintiff did not have an employment relationship with AARP Foundation. Instead, Plaintiff was a participant in a federally-funded training and community-service program – a program that, in fact, exists solely to *benefit* persons who (like Plaintiff) are 55 years of age and older – and program participants, by law and by agreement, are not employees of the federal grant recipients (including AARP Foundation) that administer the program.

---

[1] AARP Foundation was named improperly in the caption of the Complaint as "AARP."

CH:63211v2

I.  INTRODUCTION

The AARP Foundation is a non-profit grantee and national sponsor of the Senior Community Service Employment Program ("SCSEP"), a federal aid grant program that is funded by the United States Department of Labor and designed to provide temporary training and developmental opportunities to economically-disadvantaged individuals aged 55 and older. AARP Foundation's role is to administer SCSEP grant funds for the benefit of eligible enrollees, place enrollee-participants with community non-profit or public "host agencies" on a temporary basis to receive training and perform community service, and assist participants with finding part-time or full-time jobs.

While the statute that authorizes and creates the SCSEP does not directly speak to the issue of whether an enrollee-participant enjoys a formal employment relationship with a program grantee during the period of his or her temporary training and community-service assignment at a host agency, legislative history concerning the SCSEP unmistakably indicates that participants are *not* employees of program grantees (or, for that matter, of the host agencies). Accordingly, courts that have considered the issue have concluded that participants in programs like SCSEP do not enter into an employment relationship with program grantees for purposes of federal employment-discrimination law. Additionally, Plaintiff – like all other participants in the SCSEP as administered by AARP Foundation – signed a written agreement in which he explicitly acknowledged and agreed that he was not an employee of AARP Foundation. Finally, even if the familiar common-law test for determining the existence of an employment relationship is applied, Plaintiff cannot establish that he was an employee of AARP Foundation because he performed no services for AARP Foundation, and AARP Foundation had no right of

control over the community service he performed at the host agency where he was temporarily placed (in this case, the YMCA).

Summarized simply, Plaintiff's claim in this lawsuit is that he was discriminated against on the basis of his age by a government aid program in which he was eligible to participate only because of his age (combined with his economic status). That claim is facially absurd and meritless. In fact, at the time of Plaintiff's participation in SCSEP, over half of the Springfield and Peoria participants that were over age 65 (Plaintiff was 69) were also older than Plaintiff. But there is an even more fundamental basis upon which this case may be decided. Plaintiff has charged AARP Foundation with *employment* discrimination. In order to maintain such a claim, Plaintiff obviously must prove as a threshold matter that he was employed by (or attempted to become employed by) AARP Foundation. However, as a matter of law, no employment relationship between Plaintiff and AARP Foundation ever existed or was intended to be established. For this fundamental reason, AARP Foundation is entitled to summary judgment.

## II.   UNDISPUTED MATERIAL FACTS

1. The Senior Community Service Employment Program ("SCSEP") is a federal aid grant program funded by the U.S. Department of Labor ("DOL") and administered through various public and private non-profit grantees, one of which is AARP Foundation. Exhibit A, Declaration of Karen Lentsch ("Lentsch Decl."), at ¶ 2; *see also* 20 C.F.R. § 641.110.

2. SCSEP was originally authorized in 1965 by the Economic Opportunity Act, also known as the Older Americans Act of 1965, 42 U.S.C. § 3001 *et seq*. Final Rule (Supplementary Information), Senior Community Service Employment Program, 69 Fed. Reg. 19,014 (April 9, 2004); Pub. L. No. 89-73, § 1; 42 U.S.C.A. § 3001 note.

3. SCSEP is currently authorized by Title V of the Older Americans Act, 42 U.S.C. § 3056 *et seq*. *Id*.; *see also* 42 U.S.C. § 3056(a)(1). Title V of the Older Americans Act is also known as the Older American Community Service Employment Act (the "Act"). Pub. L. No. 106-501, § 501, 114 Stat. 2267 (2000).

4. SCSEP is designed "to foster and promote useful part-time opportunities in community service activities for unemployed low-income persons who are 55 years or older and who have poor employment prospects, […] to foster individual economic self-sufficiency and to increase the number of persons who may enjoy the benefits of unsubsidized employment in both the public and private sectors[.]" 42 U.S.C. § 3056(a)(1); 20 C.F.R. § 641.120; *see also* Lentsch Decl. at ¶ 3.

5. Under the Act, the DOL is authorized to distribute grants to grantees – which may include states, tribal organizations, territories, public and private nonprofit organizations, and state agencies or political subdivisions – that in turn utilize such funding to establish and carry out SCSEP projects authorized by and compliant with the Act. 42 U.S.C. § 3056(b)(1); 20 C.F.R. § 641.140.

6. AARP Foundation is an SCSEP grantee and national sponsor, and the SCSEP project established by AARP Foundation is known as the AARP Foundation Senior Community Service Employment Program. Lentsch Decl. at ¶ 2.

7. SCSEP projects established by grantees place eligible individuals in service at "host agencies," which must be public agencies or private nonprofit organizations exempt from

taxation under section 501(c)(3) of the Internal Revenue Code.  42 U.S.C. § 3056(b)(1)(C); 20 C.F.R. § 641.140.[2]

8.  SCSEP is a short-term training and community service program that helps to prepare participants for transition from community service and training assignments to gainful private or public employment.  Lentsch Decl. at ¶ 3; *see also* 42 U.S.C. § 3056(a)(1) *and* 20 C.F.R. § 641.120.

9.  As a SCSEP grantee, AARP Foundation places enrollees with community non-profit or public host agencies for temporary training and community service assignments, administers DOL grant funds for the benefit of eligible enrollee-participants, and assists participants in their search to find part-time or full-time jobs.  Lentsch Decl. at ¶ 4.

10. Enrollees generally train on average 20 hours per week at a community non-profit or public host agency, and receive financial assistance solely from federally-provided grant funds.  Lentsch Decl. at ¶ 6.

11. Most AARP Foundation SCSEP project sites have only one employee, the Project Director.  This is true for AARP Foundation's Springfield, Illinois project site, at which the only employee is Project Director Karen Lentsch, as well as for the other three sites in Illinois.  Lentsch Decl. at ¶ 5.

12. As of June 30, 2004, there were 59 enrollees at AARP Foundation's Springfield and Peoria SCSEP project sites that were 65 years of age or older; of these, 35 were older than Plaintiff.[3]  Thus, at the time of Plaintiff's participation in SCSEP, over half of the Springfield

---

[2] Participants may not be placed for service under SCSEP at political parties or religious organizations (unless the project does not involve construction, operation or maintenance of a facility used or to be used as a place of religious instruction or worship).  *Id.*

[3] Plaintiff was 69 at the time of his participation in SCSEP (his date of birth is May 21, 1935).  Complaint at 11 (EEOC Charge No. 210-2005-03175 attached to Complaint).

and Peoria participants that were over age 65 (Plaintiff was 69) were also older than Plaintiff. Lentsch Decl. at ¶ 19.

13.     Participation in the AARP Foundation SCSEP is temporary, and enrollees are expected to cooperate with the SCSEP Project Director, accept reassignments, and to actively and on their own search for and accept employment. Lentsch Decl. at ¶ 8.

14.     AARP Foundation SCSEP enrollees must sign a written agreement acknowledging their obligations under the SCSEP. Lentsch Decl. at ¶ 9.

15.     The agreement that AARP Foundation SCSEP enrollees are required to sign expressly provides that enrollees are not employees of AARP Foundation or the host agencies to which they are assigned. Lentsch Decl. at ¶ 9.

16.     From time to time, SCSEP enrollees have attempted to file charges of employment discrimination against the AARP Foundation with various state and federal agencies. Equal Employment Opportunity Commission ("EEOC") District Offices in Detroit, Michigan; Gary Indiana; Miami, Florida and New Orleans, Louisiana, as well as the Florida Commission on Human Relations, the Illinois Department of Human Rights, and the Oregon Bureau of Labor and Industries – Civil Rights Division, have all dismissed charges filed by SCSEP enrollees because of the absence of an employer-employee relationship. Exhibit B, Declaration of Melvin Radowitz ("Radowitz Decl.") at ¶ 2.

17.     In addition, the Statement of Assurances that SCSEP grantees like the AARP Foundation are required to submit to the DOL explicitly requires compliance with, *inter alia*, the Age Discrimination Act of 1975 (42 U.S.C. § 6101 *et seq.*), which prohibits discrimination on

the basis of age in programs or activities receiving federal financial assistance,[4] and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*) which prohibits discrimination on the basis of race, color or national origin in federally-funded programs, but does not require compliance *vis-à-vis* enrollees with, *e.g.*, ADEA or Title VII of the Civil Rights Act of 1964 ("Title VII"), thus further indicating that SCSEP enrollees are not to be considered employees of SCSEP grantees. Exhibit C, Training and Employment Guidance Letter No. 37-04 and Attachment IV ("Statement of Assurances – Non-Construction Programs") (June 30, 2005).[5]

18. Plaintiff signed a SCSEP Enrollment Agreement on or about October 1, 2001 and was enrolled in AARP Foundation's SCSEP project on October 21, 2001. Lentsch Decl. at ¶¶ 10-11 and Ex. 1.

19. By signing the SCSEP Enrollment Agreement, Plaintiff expressly affirmed his understanding that "SCSEP enrollees are considered to be in training status, preparing to accept unsubsidized employment, and are not employees of either the AARP Foundation or the Host Agency to which they are assigned." Lentsch Decl., Ex. 1, ¶ 1.

20. At the time of his enrollment in 2001, Plaintiff was given a temporary assignment at St. Joseph's Nursing Home. Lentsch Decl. at ¶ 12.

---

[4] It should be noted, however, that explicitly age-based federal assistance programs and corresponding activities – like SCSEP – are exempt from the Age Discrimination Act of 1975. *See* 42 U.S.C. § 6103(b)(2). Therefore, even if Plaintiff were to attempt to pursue (through proper channels) a claim of "federal assistance" discrimination against AARP Foundation, rather than *employment* discrimination, such a claim would still fail as a matter of law.

[5] The Court may take judicial notice of these official publications of the Department of Labor; the Training and Employment Guidance Letter is published at http://www.doleta.gov/Seniors/other_docs/TEGL37-04.pdf, and the Statement of Assurances – Non-Construction Programs (also known as Standard Form 424B) is published at http://www.doleta.gov/Seniors/other_docs/37-04-Att-IV-ASSURANCES.pdf and also at http://www.doleta.gov/Seniors/other_docs/sf424b.pdf.

21. Approximately five months later, Plaintiff left the project because of poor health. Lentsch Decl. at ¶ 13.

22. A few years later, Plaintiff re-enrolled in the project, and signed an Application for SCSEP Services on or about May 14, 2004. Lentsch Decl. at ¶¶ 14-15 and Ex. 2.

23. By signing the Application for SCSEP Services, Plaintiff expressly affirmed his understanding that "the assignments participants have while enrolled in the program are not 'jobs'" and explicitly stated "I acknowledge that training with the Host Agency is NOT a job and if I am enrolled I am not an employee of either the AARP Foundation or the Host Agency to which I am assigned." Lentsch Decl., Ex. 2, ¶ 3.

24. At the time of his re-enrollment, Plaintiff was given a temporary 30-day assignment at the YMCA. Lentsch Decl. at ¶ 16.

25. At the conclusion of the 30-day training assignment, the YMCA elected not to hire Plaintiff on the grounds that no position was available for which Plaintiff was qualified. Defendant YMCA's Motion for Summary Judgment (docket # 13), Exhibit A at ¶ 13.

26. AARP Foundation, through the AARP Foundation SCSEP, had no role in the YMCA's determination that no position was available for which Plaintiff was qualified. Lentsch Decl. at ¶ 17.

27. Host agencies are under no obligation to retain enrollees and they may request that an enrollee be removed from their agency at any time. Lentsch Decl. at ¶ 7.

28. AARP Foundation's SCSEP Project Director did not supervise Plaintiff in any aspect of his assignment at the YMCA, and did not direct or control the nature of the services performed at the YMCA by Plaintiff in any manner whatsoever. Lentsch Decl. at ¶ 18.

## III.    ARGUMENT

In order to maintain an action against AARP Foundation for age[6] discrimination in employment, Plaintiff must prove that he was employed by (or applied for employment with) AARP Foundation. *See* 29 U.S.C. § 623 (a), (d). However, Plaintiff cannot, as a matter of law, establish that an employment relationship between himself and the AARP Foundation ever existed, and AARP Foundation is therefore entitled to summary judgment.

### A.    As a Matter of Law, No Employer-Employee Relationship Exists Between SCSEP Grantees and SCSEP Enrollees.

The employment status of SCSEP enrollees is not explicitly defined in the Act (which states only that enrollees in projects funded under the Act cannot be considered federal

---

[6] The charge of discrimination that Plaintiff filed with the EEOC as a necessary prerequisite (*see* 29 U.S.C. § 626(d)) to bringing the instant lawsuit alleges only age discrimination. [Complaint at 11 (EEOC Charge No. 210-2005-03175 attached to Complaint).] The title of the pre-printed form that Plaintiff utilized for his Complaint, however, mentions Title VII (which prohibits discrimination on the basis of race, among other characteristics; *see* 42 U.S.C. § 2000e-2(a)), and in paragraph IV(B) of his Complaint Plaintiff alleges that he was "discharged … and replaced by a younger *white* employee." [Complaint at 5 (emphasis added).] The legal principles delineated and the arguments made in this Motion are applicable to both age discrimination and race discrimination claims, *see, e.g.*, *Rogers v. Sugar Tree Products, Inc.*, 7 F.3d 577, 581 (7th Cir. 1993) (the standard for determining whether an employee-employer relationship exists is identical under both ADEA and Title VII), and AARP Foundation is therefore entitled to summary judgment regardless of the type or number of employment discrimination claims that Plaintiff is attempting to assert in this case. To the extent that Plaintiff is attempting to maintain a race discrimination claim, AARP Foundation is entitled to summary judgment upon that claim for the additional reason that Plaintiff failed to exhaust mandatory administrative remedies by first presenting a charge of race discrimination to the EEOC and obtaining a notice of right to sue. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); *Geldon v. South Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (Title VII plaintiff may bring only those claims that were included in the EEOC charge or that are reasonably related to the allegations of the charge); *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (at minimum, "reasonably related" means that the EEOC charge and the complaint must describe the same allegedly discriminatory conduct); *Martyne v. Lutheran Health Care/Lutheran Gen. (Hosp.)/Parkside Med. Servs.*, 1998 WL 395165 (N.D. Ill. 1998) (plaintiff's age discrimination claim dismissed where EEOC charge complained only of sex and disability discrimination) (courtesy copy attached as Exhibit D); *Crawford v. Bank of America*, 986 F. Supp. 506, 508 (N.D. Ill. 1997) (allegation of race discrimination in complaint is not reasonably related to allegations of sex discrimination in EEOC charge).

employees; *see* 42 U.S.C. § 3056b(a)) or the SCSEP regulations (*see* 20 C.F.R. § 641.590, which states that "[g]rantees must determine if a participant is an employee of the grantee, local project, or host agency as the definition of an 'employee' varies depending on the laws defining an employer/employee relationship").  However, legislative history indicates that Congress did not intend for SCSEP participants to be considered employees of grantees and national sponsors like AARP Foundation.  Committee reports accompanying DOL appropriations bills have clearly stated that SCSEP enrollee-participants are not to be considered employees of national sponsors.  The Senate Committee on Appropriations Report to the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1993 states:

> The Committee reaffirms that participants in the Senior Community Service Employment Program are enrollees in a work experience program.  They are not employees of the U.S. Department of Labor or State and national sponsors administering the Senior Community Service Employment Program.

S. Rep. No. 102-397, at 15 (1992) (courtesy copy attached as Exhibit E).

Likewise, the Senate Committee on Appropriations Report to the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1994 states:

> The Committee reaffirms that participants in the Senior Community Service Employment Program are enrollees in a work and training experience program.  They are not employees of the Department of Labor or State and national sponsors administering the SCSEP.

S. Rep. No. 103-143, at 16 (1993) (courtesy copy attached as Exhibit F).

Substantially similar legislative history concerning the closely analogous Senior Environmental Employment Program (the "SEE" Program) – an Environmental Protection Agency-administered training program that, just like the DOL-administered SCSEP, exists for the benefit of older Americans and that, just like SCSEP, finds its funding authorization in the Act (*see* 42 U.S.C. § 4368a(a)) – was examined in *Daniels v. Browner*, 63 F.3d 906, 908-09 (9th

Cir. 1995). In *Daniels*, a SEE Program enrollee attempted to sue the EPA for employment discrimination. *Id*. at 907. However, the court found that the text of the Environmental Programs Assistance Act ("EPAA") (which authorizes the SEE Program), together with Senate and House committee reports to EPA appropriations bills, clearly indicated that SEE Program participants were not employees of either the EPA *or the national aging organizations which place enrollees for service under the SEE Program. Id*. at 908-09.

Therefore, just as the *Daniels* court examined and followed legislative history concerning the SEE Program to conclude that a SEE Program enrollee could not maintain an employment-discrimination claim against the EPA, this Court should conclude on the basis of the previously-detailed SCSEP legislative history that SCSEP enrollees like Plaintiff are not to be considered employees of SCSEP national sponsors such as the AARP Foundation, and that such enrollees cannot maintain an action for employment discrimination. But this Court need not rely solely on legislative history. Two courts have expressly ruled that a SEE Program participant is not an employee of the sponsoring agency that placed the participant for training and service, and therefore cannot sue the sponsoring agency for employment discrimination. *See Omeli v. Nat'l Council of Senior Citizens*, 12 Fed. Appx. 304, 307 (6th Cir. 2001); *Jaffer v. Nat'l Caucus and Center on Black Aged, Inc.*, 296 F.Supp.2d 639, 641 (M.D.N.C. 2003). This Court should find accordingly that a participant in the substantially equivalent SCSEP cannot sue his sponsoring agency – in this case, AARP Foundation – for employment discrimination.

In *Omeli*, a SEE Program enrollee attempted to bring a race and national-origin employment discrimination claim against the non-profit agency which placed him for training and service under the SEE Program, but both the district and circuit courts, citing *Daniels*, held that SEE Program enrollees are not employees of Program grantees. 12 Fed. Appx. at 307.

Accordingly, the courts concluded that SEE Program participants may not bring employment discrimination claims. *Id.*

Similarly, in *Jaffer*, the plaintiff filed a charge of religious employment discrimination with the EEOC against the National Caucus and Center on Black Aged, Inc. ("NCBA"), which was the non-profit sponsoring organization that placed the plaintiff for training and service with the EPA under the SEE Program. *Id*. at 641. The EEOC dismissed the charge, finding that the plaintiff and the NCBA did not have an employer-employee relationship. *Id*. at 641-42.[7] The plaintiff then filed an employment discrimination action against the NCBA in federal court.

The plaintiff attempted to state a claim against the NCBA under Title VII, claiming that her status as a SEE program enrollee was sufficient to hold the NCBA liable as an employer. *Id*. at 643-44. The court held that the plaintiff was not an employee of the NCBA. *Id*. at 644. The court reasoned that Congress did not intend for SEE program enrollees to be considered employees of their sponsoring agencies or of the EPA. *Id*. (*citing Daniels*). The court also noted that the plaintiff signed an enrollment agreement with the NCBA that clearly stated that neither the EPA or the NCBA "accord [her] employee status by virtue of [her] enrollment in the SEE Program." *Id*. For these reasons, the court concluded that the plaintiff was not an employee of the NCBA, and, thus, she could not sustain her Title VII claims against the NCBA. *Id.*

The facts of *Jaffer* are substantially identical to the facts here. Indeed, in the present case, Plaintiff signed not one but two agreements expressly disclaiming an employment relationship between himself and AARP Foundation. The Enrollment Agreement signed by Plaintiff in October 2001 specifically states:

---

[7]   Similarly, the EEOC and a number of state agencies have previously determined that SCSEP enrollees do not have an employer-employee relationship with SCSEP grantees such as AARP Foundation. *See* Radowitz Decl. at ¶ 2, Ex. 1.

> The Senior Community Service Employment Program (SCSEP) is a short-term, work-training program to prepare me for work and is not permanent employment. SCSEP enrollees are considered to be in training status, preparing to accept unsubsidized employment, and are not employees of either the AARP Foundation or the Host Agency to which they are assigned.

Lentsch Decl., Exhibit 1, ¶1. Similarly, the Application for SCSEP Services signed by Plaintiff in May 2004 clearly provides:

> I acknowledge that training with the Host Agency is NOT a job and if I am enrolled I am not an employee of either the AARP Foundation or the Host Agency to which I am assigned.

Lentsch Decl., Exhibit 2, ¶3. The language of both the Enrollment Agreement and Application for SCSEP Services is unequivocal in providing that Plaintiff understood and agreed that he was not an employee of the AARP Foundation. *Cf. Hayden v. La-Z-Boy Chair Co.*, 9 F.3d 617, 622 (7th Cir. 1993) (plaintiff not covered by ADEA where written agreement specifically provided that plaintiff was not an employee or agent of defendant).

No principled distinction can be made between the SEE Program and SCSEP, between the relevant legislative history concerning the SEE Program and that concerning SCSEP, or between the facts present in *Jaffer* and *Omeli* and the facts pled in the instant case. This Court should conclude that participation in SCSEP does not provide a basis for Plaintiff to maintain an employment-discrimination claim against an SCSEP grantee and national sponsor such as AARP Foundation. Accordingly, AARP Foundation respectfully submits that the Court should grant AARP Foundation summary judgment on Plaintiff's employment-discrimination claims in this litigation.

      D.      **Plaintiff Cannot Satisfy the Common Law Test for the Existence of an Employer-Employee Relationship.**

Even if this Court were to ignore the significant authorities indicating that SCSEP enrollees are not to be considered employees of their sponsoring agencies, Plaintiff still cannot

prove that he was an AARP Foundation employee. The Seventh Circuit applies a common law test for determining whether there is an employer-employee relationship. *See E.E.O.C. v. North Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998); *Alexander v. Rush North Shore Med. Ctr.*, 101 F.3d 487, 492 n.1 (7th Cir. 1996) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) and *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991)). The test focuses on the following five factors:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*North Knox Sch. Corp.*, 154 F.3d at 747 (citing *Alexander*, 101 F.3d at 492). Under the test, the right to control and direct the work of an individual is the most important factor. *Id.* (citing *Knight*, 950 F.2d at 378).

Applying these factors to the undisputed facts in the present case, it is clear that an employment relationship never existed between Plaintiff and AARP Foundation. With respect to the first and most important factor, AARP Foundation did not control and direct Plaintiff in any way, shape or form. AARP Foundation simply placed Plaintiff with an external host agency (the YMCA) for temporary training and community service, and its SCSEP Project Director did not supervise Plaintiff in any aspect of his assignment at the YMCA, or direct or control the nature of the services performed at the YMCA by Plaintiff in any manner whatsoever. Lentsch Decl. at ¶¶ 4, 16, 18. On this basis alone, this Court should conclude that Plaintiff was not AARP Foundation's employee, and that Plaintiff cannot maintain an employment-discrimination claim against AARP Foundation.

The second factor also weighs against a finding of an employer-employee relationship because no specialized skills are required of enrollees. To the contrary, the SCSEP is a short-term training and community service program designed to help older, economically-disadvantaged individuals gain skills in order to help them secure permanent employment. Lentsch Decl. at ¶ 3; *see also* 42 U.S.C. § 3056(a)(1) *and* 20 C.F.R. § 641.120.

Likewise, the third factor weighs against a finding of an employer-employee relationship because the AARP Foundation is not responsible for the costs of operating the SCSEP program. Rather, the SCSEP is a federal aid grant program funded mainly by the DOL. Lentsch Decl. at ¶ 2. Similarly, the method and form of payment and benefits weighs against a finding of an employer-employee relationship because the AARP Foundation's role is simply to administer DOL grant funds for the benefit of SCSEP enrollees; the sole source of the financial assistance received by Plaintiff was federally-provided grant funds. Lentsch Decl. at ¶¶ 4, 6.

Finally, the length of job commitment and/or expectations factor weighs heavily against a finding of an employer-employee relationship. The Enrollment Agreement and Application for SCSEP Services signed by Plaintiff evidence the expectations of Plaintiff and the AARP Foundation, and the language of both instruments is unequivocal in providing that Plaintiff was enrolled in a short-term training program and was not an employee of the AARP Foundation. Thus, neither Plaintiff nor AARP Foundation intended for Plaintiff to be considered an employee. Based on the application of the Seventh Circuit's test to the undisputed facts in the record, this Court must find that Plaintiff was not an employee of AARP Foundation, and therefore cannot, as a matter of law, attempt to hold AARP Foundation liable for alleged employment discrimination.

## IV.  CONCLUSION

For the foregoing reasons, Defendant AARP Foundation respectfully submits that the Court must grant summary judgment for Defendant as a matter of law on all of Plaintiff's claims in this litigation.

    Respectfully submitted,

    AARP Foundation

    By:  One of Its Attorneys

    s/Michael P. Butler
    Attorney Bar Number:  06224597
    Attorney for Defendant AARP Foundation
    EPSTEIN BECKER & GREEN, P.C.
    150 N. Michigan Avenue, Suite 420
    Chicago, Illinois 60601
    Telephone: (312) 499-1400
    Facsimile:  (312) 845-1998
    Email: mbutler@ebglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2006, I presented the foregoing DEFENDANT AARP FOUNDATION'S MOTION FOR SUMMARY JUDGMENT to the Clerk of the Court for filing and uploading to the CM/ECF system, and that an exact copy of the foregoing was served by first class mail delivery upon Plaintiff James Henderson, 2109 E. Jackson, Springfield, IL 62703.

    s/Michael P. Butler
    Attorney Bar Number:  06224597
    Attorney for Defendant AARP Foundation
    EPSTEIN BECKER & GREEN, P.C.
    150 N. Michigan Avenue, Suite 420
    Chicago, Illinois 60601
    Telephone: (312) 499-1400
    Facsimile:  (312) 845-1998
    Email: mbutler@ebglaw.com

## INDEX OF EXHIBITS PURSUANT TO CD-IL CM/ECF PROCEDURES, § V

A.  Declaration of Karen Lentsch

B.  Declaration of Melvin Radowitz

C.  Training and Employment Guidance Letter No. 37-04 and Attachment IV ("Statement of Assurances – Non-Construction Programs") (June 30, 2005)

D.  *Martyne v. Lutheran Health Care/Lutheran Gen. (Hosp.)/Parkside Med. Servs.*, 1998 WL 395165 (N.D. Ill. 1998)

E.  Senate Committee on Appropriations Report to the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1993, S. Rep. No. 102-397, pp. 1-3 & 15 (1992)

F.  Senate Committee on Appropriations Report to the Departments of Labor, Health and Human Services, and Education and Related Agencies Appropriation Bill, 1994, S. Rep. No. 103-143, pp. 1-3 & 16-17 (1992)