E-FILED
Thursday, 09 March, 2006  04:08:10 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

**Westlaw.**

Not Reported in F.Supp.2d                                                                                    Page 1

Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, C.D. Illinois.
Marina SMITH, Plaintiff,
v.
CATERPILLAR INC., Defendant.
**No. 05-1082.**

Feb. 8, 2006.

Marina M. Smith, Pekin, IL, pro se.

Christopher J. Degroff, Joseph S. Turner, Joshua N. Dalley, Seyfarth Shaw, Chicago, IL, Jason M. Torres, Law Office of Marilyn R. Ratliff, Evansville, IN, for Defendant.

*ORDER*

JOE BILLY MCDADE, J.

*1 Before the Court is Defendant's Motion for Summary Judgment [Doc. # 17]. For the reasons that follow, Defendant's Motion will be granted.

I.
BACKGROUND

Initially, the Court points out that Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.1(D) govern motions for summary judgment in the Central District of Illinois. *See* Fed. R. Civ. P. 56 ; CDIL-LR 7.1. While the technical requirements of Local Rule 7.1(D) do not apply to *pro se* litigants, such as Plaintiff, there are no exemptions from the requirements of Rule 56 under the Federal Rules of Civil Procedure. As a result, the Seventh Circuit requires that all *pro se* litigants be given adequate notice of the consequences of failing to properly respond to a motion for summary judgment. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir.1992).

In compliance with the Seventh Circuit's mandate, Plaintiff was provided with the following notice on November 15, 2005:
  NOTICE IS HEREBY GIVEN that a case-dispositive motion (such as a motion for summary judgment or motion for judgment on the pleadings) has been filed....
  When a motion for summary judgment is made and properly supported, you may not simply rely upon the allegations made in your complaint. Rather, you must respond by affidavit(s) or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, a copy of which is attached. Your response must set forth specific facts showing that there is a genuine issue of material fact for trial. If you do not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment. *See* Fed.R.Civ.P. 56(e)(attached).
[Doc. # 18] (emphasis in original).

To avoid summary judgment, Plaintiff must therefore counter Defendant's factual assertions with "materials of evidentiary quality (such as affidavits or depositions)[,]" pointing to specific facts showing a genuine issue for trial. *Green v. National Steel Corp.,* 197 F.3d 894, 899 (7th Cir.1999); *see also Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996) (stating that the evidence relied upon by the non-moving party must be of the type otherwise admissible at trial). Thus, to the extent Plaintiff proffers deposition testimony to controvert Defendant's factual assertions, the Court will view these disputed facts in the light most favorable to Plaintiff, the non-moving party. *See Lesch v. Crown Cork & Seal Co.,* 282 F.3d 467, 471 (7th Cir.2002). But, to the extent Plaintiff fails to counter Defendant's factual assertions with "materials of evidentiary quality," the Court will accept Defendant's version of the facts as true for purposes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

of summary judgment. *See Dent v. Bestfoods,* 2003 U.S. Dist. LEXIS 14871, at *8-9 (N.D.Ill. August 27, 2003).

As such, the following facts are mostly uncontested. Plaintiff, Marina Smith, is a former employee of Defendant, Caterpillar Inc. She was hired on March 23, 2004, as a Material Specialist and worked at Caterpillar's Morton warehouse facility from March 29, 2004, to October 4, 2004. Prior to her employment with Caterpillar, Smith had two surgeries performed on her right hand--one for an entrapped tendon and the other for carpal tunnel. Smith claims that both surgeries were successful; she completed all of her therapy and was released with no restrictions. She further testified that during her pre-employment physical at Caterpillar, she had no problems with the use of her right hand and, therefore, no reason to be placed under any physical restrictions. In fact, she claims she had not been restricted by her right hand "for years and years" prior to her employment with Caterpillar.

*2 As a Material Specialist, Smith's duties included: removing parts from plastic totes, packaging the parts in boxes, and moving the boxes with a hand dolly (called a "pallet jack") to the shipping area a few feet away. Smith claims the individual parts weighed between 10 and 32 pounds. She further alleges that although totes were to weigh no more than 50 pounds total, they often were heavier.

Nonetheless, Smith worked without incident until May 13, 2004, when allegedly a heavy metal cylinder part accidentally fell on her right wrist. Smith initially believed the injury to be no more than a sprain and failed to mention the incident to anyone at Caterpillar. Four days later, her right wrist began to hurt and she reported to Caterpillar's on-site medical facility. While there, Smith completed an Incident Report but failed to indicate that her injury was work-related as required by the form. Smith, nevertheless, claims that one of the nurses told her the doctor would "take care of" that section of the Incident Report.

The following day on May 18, 2004, Dr. Just evaluated Smith at Caterpillar's on-site medical facility. When asked about the source of her injury, Smith claims she told Dr. Just she injured her right wrist on May 13, 2004, while working. Dr. Just's examination notes, however, state otherwise. In any event, Smith told Dr. Just she now had a lighter workload and did not request to be placed under any physical restrictions due to her wrist injury. Dr. Just diagnosed her injury as a sprained wrist and allowed Smith to return to work on May 18, 2004, without any restrictions.

Between May 18, 2004, and June 9, 2004, Smith worked without incident. However, on June 10, 2004, Smith complained to Caterpillar management for the first time regarding pain to her right wrist. She was then instructed to seek medical attention at the Caterpillar medical facility. She scheduled an appointment to see Dr. Just on June 15, 2004. At this appointment, Dr. Just placed Smith on restrictions, including no lifting greater than 25 pounds and no repetitive gripping with her right wrist.

When Smith returned to her workstation on June 15, 2004, she was sent home because there was no work that could be performed within the boundaries of her restrictions on that date. Smith was not instructed to return to work until July 28, 2004. At this time, Smith was reassigned to pushing a tote cart around the warehouse to collect small parts from warehouse shelves and bins. Caterpillar claims that this new work assignment was within Smith's physical restrictions. Indeed, Smith concedes that she was instructed by her supervisor to split any order that was greater than 25 pounds to meet her restrictions. She further testified that she was "sure" that her supervisor assigned her the new job under the belief that it was within her restrictions.

Smith, nevertheless, alleges that her new assignment also required her to place parts in bags, to staple the bags closed, to place the closed bags in a tote cart, and finally, to push the tote cart to a conveyor belt. Smith claims that the tote cart weighed approximately 150 pounds and the stapling required repetitive griping with her right wrist--exceeding her physical restrictions. [FN1]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 3
Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

> FN1. The Court notes that Dr. Just did not place a "no pushing/pulling" restriction on Smith until September 14, 2004.

*3 Smith complained of pain to her right wrist on at least three other occasions. In each situation she was instructed to report to the Caterpillar medical facility for evaluation and her physical restrictions were adjusted. Eventually by September 16, 2004, Smith had been restricted from climbing ladders, mopping out shelves, or using her right hand for any lifting. After each of these adjustments, Caterpillar continued to find new work assignments to meet Smith's restrictions.

In the six months Smith worked at Caterpillar, she accumulated at least 20 tardies or unapproved absences. Smith admits that on August 20, 2004, she was warned that her failure to report to work on time was unacceptable and that any future unapproved time off would result in her termination. She further admits that Caterpillar has a reasonable expectation that she report to work when scheduled and be on time.

Nonetheless, on September 24, 2004, Smith failed to show up for work. She called Caterpillar's automated attendance line and explained that her husband had been sent home from work due to severe chest pains and, as a result, she would need to stay home in case his condition worsened so that she could call an ambulance. Later that evening her husband began to feel better and did not need medical attention.

Smith admits that her failure to report to work on September 24, 2004, had nothing to do with her wrist injury and she could be terminated at anytime for unapproved absences. When she returned to work on September 26, 2004, her supervisor informed her that her absence would not be excused unless she submitted medical documentation by the end of the week. Thus, on September 30, 2004, Smith gave her supervisor a note that she admits she wrote herself but claims was signed by her husband's boss. The note stated that her husband had been ill on September 24, 2004, and left work early due to chest pains. Smith also gave her supervisor a copy of her husband's outpatient service record from Pekin Hospital in 2002.

Smith's supervisor reported this incident to the Labor Relations Manager who determined that the documentation was insufficient to excuse Smith's September 24, 2004 absence. In light of Smith's previous attendance problems, a warning regarding possible termination, and her failure to provide adequate documentation to excuse her most recent absence, Smith was discharged on October 4, 2004. Smith admits that she does not believe she was discharged because of her alleged disability. In fact, in her deposition testimony she stated: "They fired me because I reported them to OSHA and they found out. That is why the fired me." [Pl. Dep. pg. 193].

After she was discharged from Caterpillar, Smith sought additional medical treatment for her wrist. She claims she was diagnosed with an entrapped tendon and had corrective surgery performed on December 22, 2004. As Smith puts it, she is now "perfectly fine." [Pl. Dep. pg. 212].

Prior to her termination, however, Smith filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2004, alleging Caterpillar failed to provide reasonable accommodation of her alleged disability. Since Smith filed her EEOC Charge of Discrimination the day before she was fired, she did not state a claim for discriminatory discharge; nor could she. Further, Smith failed to amend her EEOC Charge of Discrimination to include a claim for discriminatory discharge after her employment was terminated on October 4, 2004.

*4 On January 19, 2005, Smith's Charge of Discrimination was dismissed and she was issued a Right-To-Sue Letter by the EEOC on her failure to provide reasonable accommodation claim. She has now filed the instant complaint against Caterpillar alleging claims under the Americans with Disabilities Act ("ADA") for: (1) discriminatory discharge, and (2) failure to provide reasonable accommodation of her alleged disability.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 4

Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

## II.
## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) . The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, to survive summary judgment the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Neither "the mere existence of *some* alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original), nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec.,* 475 U.S. at 586, is sufficient to defeat a motion for summary judgment. *See also Chiaramonte v. Fashion Bed Group, Inc.,* 129 F.3d 391, 395 (7th Cir.1997). Instead, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it would bear the burden at trial." *Filipovic v. K & R Express Sys., Inc.,* 176 F.3d 390 (7th Cir.1999).

This Court, however, must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Nevertheless, in considering the facts in the light most favorable to the non-moving party, the Court is not "required to draw every conceivable inference from the record-- only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee,* 928 F.2nd 232, 236 (7th Cir.1991). In essence, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.,* 108 F.3d 789, 796 (7th Cir.1997) (quoting *Matsushita Elec.,* 475 U.S. at 587); *see also Liberty Lobby,* 477 U.S. at 248, 251-52.

## III.
## ANALYSIS

*5 The ADA prohibits an employer from "discriminating against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a); *see also* 29 C.F.R. § 1630.4; 29 C.F.R. § 1630.9. Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." [FN2] 42 U.S.C. § 12102(2)(A); *see also Furnish v. SVI Sys. Inc.,* 270 F.3d 445, 448 (7th Cir.2001). To be deemed a "qualified individual with a disability," a person must not only be disabled under the ADA's definition but, must also be able to "perform the essential functions of the employment position[,]" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *see also Furnish,* 270 F.3d at 448.

> FN2. The ADA also defines "disabled" as "a record of such impairment" or "being regarded as having such impairment." 42 U.S .C. §§ 12102(2)(B), (C). Plaintiff, however, does not rely on either of these bases to support her ADA claims.

Employer discrimination under the ADA includes both discriminatory discharge and failure to provide reasonable accommodation. 42 U.S.C. § 12112(a), (b)(5)(A); *see also Bombard,* 92 F.3d at 563. Thus, to prevail under either theory, a plaintiff must show that "(1) [s]he is disabled within the meaning of the ADA, (2)[s]he is qualified to perform the essential functions of [her] job either with or without reasonable accommodation, and (3)[s]he suffered from an adverse employment decision because of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 5

Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

[her] disability." *Pugh v. City of Attica,* 259 F.3d 619, 626 (7th Cir.2001) (citing *Bekker v. Humana Health Plan, Inc.,* 229 F.3d 662, 669-70 (7th Cir.2000)). Failure to establish any one of the three elements of a prima facie ADA claim is grounds for dismissal. As the Court can decide this Motion without reaching the third element, this Order will only address the first and second elements.

A. Smith is not Disabled Within the Meaning of the ADA.

To determine whether an individual is disabled within the meaning of the ADA, the Supreme Court has articulated a three-part test. *See Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, this Court must determine whether Plaintiff suffered from a physical or mental impairment. *See id.* If so, the Court must then determine whether the major life activity claimed by Plaintiff constituted a major life activity under the ADA. *See id.* at 637. Last, the Court must determine whether Plaintiff's impairment "substantially limited" the major life activity in question. *See id.* at 639.

Although there may be some question as to whether Smith's wrist injury amounts to a "physical impairment" under the ADA, [FN3] the parties do not dispute this issue. Thus, for purposes of analysis, the Court will assume without deciding, that Smith's wrist injury does amount to a "physical impairment" under the ADA. With this being said, the Court must now determine which major life activity is in dispute.

> FN3. The EEOC Regulations interpreting the ADA define "physical impairment," as "any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine." 29 C.F.R. § 1630(h)(1). Smith claims that in addition to being

diagnosed with a sprained wrist, she was also diagnosed with having an entrapped tendon, which resulted in corrective surgery being performed on December 22, 2004.

The EEOC Regulations define major life activities as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); *Furnish,* 270 F.3d at 449. In essence, "a major life activity is something that is 'integral to one's daily existence.'" *Furnish,* 270 F.3d at 449 (quoting *Lawson v. CSX Transp., Inc.,* 245 F.3d 916, 923 (7th Cir.2001).

*6 Here, Smith does not point to any evidence indicating that she is unable to care for herself, perform manual task, walk, see, hear, speak, breathe or learn; rather, she claims the major life activity that is affected by her physical impairment is that of working. The Seventh Circuit has in fact held that working can be deemed a major life activity for purposes of the ADA. *See, e.g., Furnish,* 270 F.3d at 449; *Skorup v. Modern Door Corp.,* 153 F.3d 512, 514 (7th Cir.1998). Thus, the only remaining question is whether Smith's wrist injury "substantially limited" her ability to work.

"[A] person is substantially limited by an impairment if that person is either unable to perform a major life activity or is significantly restricted as to the condition, manner, or duration under which the individual can perform the major life activity as compared to an average person in the general population." *See Furnish,* 270 F.3d at 450 (internal quotations and citations omitted); 29 C.F.R. § 1630.2(j)(1). Therefore, not all impairments are disabilities with respect to the ADA; instead, courts must consider the nature and severity of the plaintiff's impairment, its expected duration, and its expected permanent or long-term effect. *See Furnish,* 270 F.3d at 450 (citing 29 C.F.R. § 1630.2(j)(2)); *see also Ogborn v. United Food & Commercial Workers Union,* 305 F.3d 763, 767 (7th Cir.2002) (stating that "intermittent, episodic impairments such as broken limbs and appendicitis are not disabilities"); *Waggoner v. Olin Corp.,* 169

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 6

Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

F.3d 481, 484 (7th Cir.1999) (stating that the term "[d]isability does not include temporary medical conditions").

However, even if Smith's wrist injury is debilitating at times, the record does not support a finding that she is "significantly restricted in [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *See* 29 C.F.R. § 1630.2(j)(3)(i); *Sutton,* 527 U.S. at 491- 92. In fact, her "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See* 29 C.F.R. § 1630.2(j)(3)(i). As stated by the Supreme Court:

> To be substantially limited in the major life activity of working, [ ], one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Sutton,* 527 U.S. at 492. Furthermore, the Seventh Circuit has held that "court[s] may also examine whether a plaintiff can perform or has procured other employment," *Byrne v. Board of Educ. .,* 979 F.2d 560, 565 (7th Cir.1992), and the ability to find alternate employment has been a major factor in granting summary judgment to employers. *See, e.g., Roth v. Lutheran Gen. Hosp.,* 57 F.3d 1446 (7th Cir.1995).

*7 In the instant matter, there is sufficient evidence in the record to indicate that Smith's wrist injury is not severe, has been corrected by surgery, and is not expected to cause any serious long-term or permanent effects. [Pl. Dep. pgs. 139-40, 212, 221-22]; *see also Sutton v. United Airlines,* 527 U.S. 471, 488-89, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (holding that "disability" under the ADA "is to be determined with reference to corrective measures"); *Furnish,* 270 F.3d at 451 (holding that courts "must examine the plaintiff's condition as it existed after corrective or mitigating measures [are] used to combat the impairment"). In particular, Smith gave the following deposition testimony:

> I didn't think of myself as disabled. I don't think of myself as a disabled person.... [T]o me a disabled person would be a person that can not go to work for some reason or that they have really a disability that either holds them back from holding a job or doing a job, something that would stop them from doing it.
>
> * * *
>
> *I don't have a disability now. I've had surgery. I'm perfectly fine.*

[Pl. Dep. pgs. 139-40, 212 (emphasis added) ].

Furthermore, when asked during her deposition whether her wrist injury has kept her from doing a broad class of jobs, Smith responded by stating: *"Oh, no. No. I could probably do basically any job. And I intend on working for the rest of my healthy existence as long as I can possibly work."* [Pl. Dep. pgs. 221-22 (emphasis added) ]. In addition, Smith admits that she has "20 years experience in payroll, accounting, taxes, management, & administrative assistant, which [she] can still perform these jobs." [Pl. Complaint pg. 7]. Finally, since losing her job at Caterpillar, Smith has also been employed on at least two separate occasions. She worked for a metal fabricating company for three months doing payroll and, is now currently employed as a financial assistant to a Director of Finance. *See* [Pl. Dep. pg. 218; Pl. Opp. Resp. pg. 1]. Thus, based on the record before the Court, no rational trier of fact could find Smith "disabled" under the ADA and, therefore, Caterpillar is entitled to summary judgment as a matter of law.

B. Smith is not Qualified to Perform the Essential Functions of Her Job (with or without reasonable accommodation).

Although Smith is unable to establish that she is "disabled" within the meaning of the ADA, this is not the sole reason why Caterpillar is entitled to summary judgment. In addition, Smith is unable to show that she is qualified to perform the essential functions of her job (with or without reasonable accommodation).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                             Page 7
Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**(Cite as: 2006 WL 306652 (C.D.Ill.))**

Whether someone meets the definition of a "qualified individual with a disability" involves a two-step analysis. *See Bombard v. Fort Wayne Newspapers,* 92 F.3d 560, 563 (7th Cir.1996) (citing 29 C.F.R. § 1630.2(m)). The Court must first consider whether the individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position ..." 29 C.F.R. § 1630.2(m); *see also Bombard,* 92 F.3d at 563. If she does, the Court must then consider whether she "can perform the essential functions of such position[,]" with or without reasonable accommodation. 29 C.F.R. § 1630.2(m); 42 U.S.C. § 12111(8); *see also Jackson v. City of Chicago,* 414 F.3d 806, 812 (7th Cir.2005). It is the plaintiff who bears the burden of showing that she could perform the essential functions of the job as of the time of her termination. *See Basith v. Cook County,* 241 F.3d 919, 931 (7th Cir.2001); *Corder v. Lucent Tech. Inc.,* 162 F.3d 924, 928 (7th Cir.1998).

*\*8* Caterpillar does not dispute the fact that Smith has the requisite skill, experience, and education to perform the job of a Material Specialist. Instead, it is Caterpillar's argument that Smith has failed to put forth sufficient evidence to show that she could perform the essential functions of her job with or without reasonable accommodation.

In support of this argument, Caterpillar has submitted the uncontested affidavit of its Labor Relations Manager, Ronald Marshall, establishing that it is an essential job function of a Material Specialist to report to work on time and as scheduled. [Marshall Aff. pg. 1]. Indeed, the Seventh Circuit refuses to second-guess an employer's right to describe the essential requirements of a job. *See, e.g., Jackson,* 414 F.3d at 811; *Basith,* 241 F.3d 919, 928-29; *DePaoli v. Abbott Labs.,* 140 F.3d 668, 674 (7th Cir.1998). As a result, "an employee who does not come to work cannot perform the essential functions of [her] job." *Corder,* 162 F.3d at 928 (quoting *Nowak v. St. Rita High School,* 142 F.3d 999, 1003 (7th Cir.1998)); *see also Jovanovic v. In-Sink-Erator,* 201 F.3d 894, 899-900 (7th Cir.2000) (holding that when a factory employee misses 24 days in a 12 month period it is impossible for him to perform the essential functions of his job). Thus, Smith's sporadic tardiness and unexplained absences, even those that are a result of her disability, remove her from the ADA's scope of protection. *See Waggoner,* 169 F.3d at 484.

IV.
CONCLUSION

Because Smith is neither "disabled" nor "qualified to perform the essential functions of her job," the Court will refrain from addressing the individual merits of Smith's ADA claims based on discriminatory discharge and failure to provide reasonable accommodation. Therefore, based on the undisputed record before the Court, Caterpillar is entitled to summary judgment on both of Smith's ADA claims.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 17] is GRANTED.

CASE TERMINATED.

ENTERED this *7th* day of February, 2006.

Not Reported in F.Supp.2d, 2006 WL 306652 (C.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:05cv01082 (Docket) (Mar. 11, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.